**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVID C. SUSSMAN,**

**Plaintiff,**

**vs.**                                             **Case No. 4:14cv619-RH/CAS**

**C. METCALF,
and ASST. WARDEN CUMBIE,**

**Defendants.**

_____/

## REPORT AND RECOMMENDATION

On August 25, 2015, Defendants Cumbie and Metcalf filed a motion

to dismiss.  ECF No. 52.  Plaintiff David Sussman, a pro se prisoner, was

advised of his obligation to respond, ECF Nos. 54, 60, and his response

was timely filed.  The motion to dismiss is ready for a ruling.

**Allegations of the Fifth Amended Complaint, ECF No. 47**

At the time of the events at issue in this case, Mr. Sussman  was

housed at Zephyrhills Correctional Institution.  Mr. Metcalf was the law

librarian there and Ms. Cumbie was the assistant warden.  ECF No. 47 at

2, 5.  Mr. Sussman wrote a grievance to the library in April 2014 which stated that if his grievance was not approved, "he would 'sue you.'" *Id.* at 5.[1]  Assistant Warden Cumbie directed Mr. Metcalf to write Mr. Sussman a disciplinary report for making a threat.  Mr. Sussman was found guilty of the charge and his appeals were denied.  True to his word, Mr. Sussman brought a § 1983 lawsuit against Cumbie and Metcalf and another Defendant in state court in July 2014 which was then removed to this Court.[2]

In October 2014, Cumbie and Metcalf were served with the original complaint.  ECF No. 47 at 6.  Mr. Sussman contends that the Assistant Warden again directed Mr. Metcalf to write Mr. Sussman another disciplinary report, this time charging him with bribery.[3]  *Id.*  Mr. Sussman was again found guilty and "sentenced to 30 days in the box."  *Id.*  His

---

[1] A copy of the grievance, ECF No. 24-1 at 10, was submitted by Mr. Sussman as an Appendix.  ECF No. 24.

[2] This case was removed on November 19, 2014.  ECF No. 1.

[3] The disciplinary report for bribery alleged that Mr. Sussman told Mr. Metcalf that if he "could get the DR stated in his case against the DOC dropped, he might stop seeking monetary damages against" Mr. Metcalf.  ECF No. 47 at 6.

appeal of that disciplinary charge was successful and the disciplinary report was "reversed." *Id.*

On October 23, 2014, Mr. Sussman was placed on suicide watch and then transferred to a mental health unit at Charlotte Correctional Institution.  ECF No. 47 at 6.  Mr. Sussman thought that he would be returned to Z.C.I. after treatment but in December 2014, he was "diverted" to Apalachee Correctional Institution ("C.I."), which he contends is well known by prisoners as a "punishment camp."  *Id.* at 6-7.  During that transfer, Mr. Sussman was attacked by another inmate and contends that his transfer to Apalachee C.I. was "in retaliation for having filed this" case.  *Id.* at 7.  Also in December 2014, Mr. Sussman advises that his first disciplinary report issued for making a threat was reversed.[4]  *Id.*

Mr. Sussman appears to assert two claims against Mr. Metcalf for violations of his First Amendment right to freedom of speech.  ECF No. 47.  He contends that both disciplinary reports were in retaliation for his having engaged in protected speech.  *Id.*  Mr. Sussman also asserts two

---

[4] A copy of the December 1, 2014, "amended response" which reversed the disciplinary report for threats was submitted by Mr. Sussman in his Appendix.  ECF No. 24-1 at 21.

First Amendment claims against Assistant Warden Cumbie based on the same facts.  *Id.* at 8.  Mr. Sussman claims Ms. Cumbie did not exercise her authority as the supervisor of Mr. Metcalf to either prevent him from writing the retaliatory disciplinary reports or, in the alternative, she "approved, encouraged or instructed him to write" the disciplinary reports. *Id.*

**Defendants' Motion to Dismiss, ECF No. 52**

The motion to dismiss urges dismissal of some claims for failure to exhaust administrative remedies.  ECF No. 52 at 5-8.  It is also argued that Mr. Sussman's request for gain time is relief that cannot be provided in a civil rights case and, moreover, he has not alleged a viable due process claim.[5]  *Id.* at 9-12.  Furthermore, the motion contends that the claim against Ms. Cumbie is based on supervisory liability and is insufficient to state a claim.  *Id.* at 12-16.  Finally, the defense of qualified immunity is asserted and § 1997e(e) is raised to bar the request for compensatory and punitive damages.  *Id.* at 16-18.

---

[5] This argument is not addressed as Mr. Sussman "has voluntarily dismissed all fo his claims that sought gain time."  ECF No. 61 at 4.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to

FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To

survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)

(quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[6]  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at

556); see also Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380

---

[6] The complaint's allegations must be accepted as true when ruling on a motion to
dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert.
denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's
disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965, quoting
Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

(11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 556).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery

and "take up the time of a number of other people . . . ." <u>Dura</u>

<u>Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 125 S.Ct. 1627, 161

L.Ed.2d 577 (2005) (quoted in <u>Twombly</u>, 127 S.Ct. at 1966).  The

requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff

armed with nothing more than conclusions."  <u>Iqbal</u>, 556 U.S. at 678-79,

129 S.Ct. at 1949.  A complaint does not need detailed factual allegations

to survive a motion to dismiss, but Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-

harmed-me accusation."  556 U.S. at 678, 129 S.Ct. at 1949.  "A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'"  *Id.* (quoting <u>Twombly</u>,  550

U.S., at 555, 127 S.Ct. 1955).

Courts should take a "two-pronged approach" when considering a

motion to dismiss under Rule 12(b)(6).  <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct.

at 1950.  The first consideration is whether the complaint presents "well-

pleaded factual allegations" which are entitled to a presumption of truth or,

whether, the complaint merely asserts "legal conclusions" which "are not

entitled to the assumption of truth."  *Id.* at 679, 129 S.Ct. at 1950.  If the

complaint contains factual allegations that are well pled, the second step is

to consider whether the non-conclusory factual allegations "plausibly give

rise to an entitlement to relief." *Id.* If so, a motion to dismiss should be

denied. *Id.*, at 680, 129 S.Ct. at 1950-51 (citations omitted).

**Analysis**

**A.    Exhaustion**

Congress enacted the Prison Litigation Reform Act, which provides

that "[n]o action shall be brought with respect to prison conditions under

section 1983 . . . by a prisoner . . . until such administrative remedies as

are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion

requirement of §1997e(a) is a mandatory, pre-condition to suit and the

Court does not have discretion to waive this requirement or provide

continuances of prisoner litigation in the event that a claim has not been

exhausted prior to filing. Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct.

1819, 149 L.Ed.2d 958 (2001); Woodford v. Ngo, 548 U.S. 81, 85, 126

S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006) (stating "[e]xhaustion is no

longer left to the discretion of the district court, but is mandatory" and

citing to Booth v. Churner, 532 U.S. at 739, 121 S.Ct. 1819)); *see also*

Porter v. Nussle, 534 U.S. 516, 524–25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998).  The language specifically states that no action "shall be brought" which requires looking to the date of case initiation to determine if claims are exhausted. Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) (holding that when "considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred."); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding prisoner "was required to exhaust his administrative remedies before filing suit.").  Because "brought" means when a complaint is filed, grievances must have been exhausted prior to filing suit, and filing amended complaint does not cure an exhaustion defect.  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (explaining that amendments do not

change the historical fact of when a complaint was filed and what

grievances were exhausted as of that date)(citing <u>Brown v. Sikes</u>, 212

F.3d 1205, 1207 (11th Cir. 2000)).

Mr. Sussman gave his initial complaint to prison officials at Zepyrhills

C.I. for mailing on June 30, 2014.  Thus, pursuant to the "prison mailbox

rule," that is the date this action was "brought" for purposes of § 1997e(a),

and it is the deadline by which Mr. Sussman must have exhausted the

Florida Department of Corrections' administrative grievance process.

Mr. Sussman argues, however, that the exhaustion requirement is

not applicable to this case because it was initiated in state court and then

removed to federal court.  ECF No. 61 at 1-2.  He contends that if courts

do not dismiss cases under § 1915(g), the provision which bars in forma

pauperis status for prisoners with "three strikes," when a case is removed

to federal court, then the exhaustion provision should not be applicable

either.  *Id.* at 7-8.

First, the statute provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).  The explicit language of the statute makes no

reference to *where* a case is brought but, rather, applies broadly to the

*type* of case litigated.[7]

Second, this statute applies regardless of whether a § 1983 case

was initiated or removed to federal court promotes uniform rulings.

Indeed, both federal and state courts have concurrent jurisdiction over civil

rights actions brought pursuant to § 1983.  Felder v. Casey, 487 U.S. 131,

147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123 (1988) (noting that

Congress did not establish federal courts as the exclusive forum to

remedy civil rights deprivations).  State courts in Florida dismiss prisoner

civil rights actions brought under § 1983 for failure to meet the exhaustion

requirement of 42 U.S.C. § 1997e.  *See* Hollingsworth v. Brown, 788 So.

2d 1078 (Fla. 1st DCA 2001).  The Supreme Court has noted the

importance of requiring proper exhaustion, finding that the PLRA is not "a

---

[7] That language is different from another provision of the PLRA which limits recovery.  "No *Federal civil action* may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)."  42 U.S.C. § 1997e(e).

toothless scheme."  <u>Woodford</u>, 548 U.S. at 95, 126 S. Ct. at 2388

(explaining that "[a] prisoner who does not want to participate in the prison

grievance system will have little incentive to comply with the system's

procedural rules unless noncompliance carries a sanction").  The

<u>Woodford</u> Court concluded that the PLRA does not permit a prisoner to

bypass available administrative remedies by filing late grievances.  *Id.*  Nor

should the PLRA require dismissal for a prisoner's failure to exhaust if

claims are initiated in federal or state court, but not if a claim is removed to

federal court.

Without discussion, cases brought pursuant to § 1983 in state court

which were removed to federal court have been dismissed under

§ 1997e(a).  In <u>A.N.R. ex rel. Reed v. Caldwell</u>, 111 F. Supp. 2d 1294,

1298 (M.D. Ala. 2000), the court dismissed a § 1983 claim for access to

educational courses and activities in jail under § 1997e(a) because the

detainee did "not deny that she failed to file any written grievance with

prison administrators," and the court concluding that the claim was brought

"with respect to prison conditions".  Notably, the court discussed whether

the claim concerned "prison conditions," but did not specifically discuss

the applicability of § 1997e(a) to the case which was initiated in state court and removed to federal court.  Caldwell, 111 F. Supp. 2d at 1297-98. Similarly, in Garcia v. Glover, 197 F. App'x 866, 868 (11th Cir. 2006), the Eleventh Circuit affirmed the dismissal of a § 1983 case which was removed to federal court on the basis that "exhaustion was a precondition to filing this lawsuit."  The court did so without any discussion of whether § 1997e(a) should be applied in a removal case.

There are important policy reasons which underscore § 1997e(a)'s exhaustion requirement.  Woodford, 548 U.S. at 89-90, 126 S. Ct. at 2385;  Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (quoted in Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (noting that imposing a procedural default component comports with the intent of Congress and "prevents an end-run around the exhaustion requirement") (citing to Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004)).  By writing an exception into § 1997e(a) for cases removed to federal court, it "would turn that provision into a largely useless appendage."  548 U.S. at 93, 126 S. Ct. at 2387.  It would also create incentives for inmates to thwart a state's grievance process, file suit in state court, and hope that state

prison officials would remove a civil rights case to federal court as permitted by the removal statute, 28 U.S.C. § 1441, § 1443. Such a loophole should not be created where the language of the statute is clear. Accordingly, the exhaustion provision of § 1997e(a) is applicable in this case.

The only claim exhausted by Mr. Sussman prior to case initiation is his challenge to the disciplinary report written for making threats. That claim is based on Mr. Sussman's grievance to the law library in which he stated that if his grievance was not approved, "he would 'sue you.'" ECF No. 2-1 at 5.[8] All other factual allegations occurred after June 30, 2014, the date his case was initiated in state court, and should be dismissed because they are unexhausted. Because no argument was made that Mr. Sussman did not properly exhaust administrative remedies concerning the disciplinary report issued for making threats, it is deemed to be exhausted.

---

[8] Review of this allegation as presented in the initial complaint makes clear that Mr. Sussman was in confinement at the time and had requested materials from the law library. After his request was denied, he wrote a grievance to the library "demanding indicies" and stating if he did not receive them, he would sue. ECF No. 2-1 at 1.

## B.     First Amendment Claim

The motion to dismiss argues that the complaint fails to state a claim

for relief against Assistant Warden Cumbie because there is no causal

connection to Mr. Metcalf's writing of the disciplinary report.  ECF No. 52

at 14.  The argument is based on the assertion that Mr. Sussman seeks

relief against Assistant Warden Cumbie "for approving the DR for Spoken

Threats" which was written by Mr. Metcalf.  *Id.*  Thus, according to the

Assistant Warden, it is based on supervisory liability only and is insufficient

to state a claim.  ECF No. 52 at 14-15.

Mr. Sussman did not allege that the Assistant Warden merely

approved a disciplinary report.  Instead, he alleged that Mr. Metcalf wrote

the DR "at the behest of" Assistant Warden Cumbie.  ECF No. 47 at 5.

Mr. Sussman was found guilty of the charge, sentenced to 30 days in

disciplinary confinement, and although his appeals were denied initially,

the disciplinary charge was eventually overturned on December 1, 2014.

ECF No. 24-1 at 4, 21.  An allegation that Assistant Warden Cumbie

directed Mr. Metcalf to write the DR is an allegation of direct involvement.

The motion to dismiss should be denied on this basis.[9]

## C.   Qualified Immunity

The motion to dismiss raises qualified immunity as a defense.  ECF

No. 52 at 16-17.  After explaining the defense,[10] the motion to dismiss

then states: "As discussed above, Plaintiff fails to state a claim for any

constitutional violation as to Defendants Metcalf and Cumbie."  *Id.* at 17.

"Therefore, Defendants are entitled to qualified immunity and the second

prong of the [qualified immunity] analysis need not be reached."  *Id.*

The motion to dismiss did not present argument as to why the

complaint failed to present plausible First Amendment claims against

Defendants Metcalf or Cumbie beyond claiming the complaint was based

on an improper supervisory claim against Cumbie.  ECF No. 52 16; *see*

---

[9] The motion to dismiss does not argue the merits of the claims for either retaliation or infringement of the right to free speech.  Merely providing the standard of review is insufficient and the Court will not speculate as to any potential argument that was not clearly raised.  Additionally, the motion fails to present any argument as to why the complaint is insufficient to state a claim as to Mr. Metcalf.  ECF No. 52 at 12-16.

[10] "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (quoted in <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir. 2012)).

*also* ECF No. 61 at 4-5.  Notwithstanding the unsupported nature of this defense, it should be denied at this time.

Mr. Sussman's allegations must be accepted as true at this point in the litigation.  He alleged that he was given a disciplinary report because he suggested, in a not so respectful manner, that he would sue if he was not provided the materials he requested from the law library.  Mr. Sussman has stated a plausible First Amendment claim.

Mr. Sussman points to Moton v. Cowart, 631 F.3d 1337, 1342-43 (11th Cir. 2011), as providing clearly established law.  ECF No. 61 at 5 (citing to ECF No. 38 at 4-5).  In Moton, the Eleventh Circuit concluded "as a matter of law that an inmate's statement that he wants or plans to contact his attorney does not constitute a punishable 'spoken threat.'"  The court held that "[a] contrary rule would chill the invocation and exercise of inmates' constitutional rights."  Moton, 631 F.3d at 1343 (concluding that a "statement about contacting his attorney is not inconsistent with his prisoner status or with legitimate penological objectives.").  A statement advising of an intent to contact an attorney is sufficiently similar to a statement that one intends to initiate a lawsuit.  Moreover, for over thirty

years it has been well established that prison officials cannot retaliate

against a prisoner for filing a lawsuit or grievances.  Wright v. Newsome,

795 F.2d 964, 968 (11th Cir. 1986); Wildberger v. Bracknell, 869 F.2d

1467, 1468 (11th Cir. 1989);  Williams v. Brown, 347 F. App'x 429, 435

(11th Cir. 2009).  If a prisoner cannot be punished for having filed a

lawsuit, he may not be punished for stating his intent to do so either.  The

qualified immunity defense should be denied.

## D.    Compensatory and Punitive Damages

The motion to dismiss argues that Mr. Sussman's request for

compensatory and punitive damages must be dismissed because he

does not demonstrate physical injury.  ECF No. 52 at 17-18.  Mr. Sussman

requests compensatory and punitive damages of $20,000.00 from each

Defendant.  ECF No. 47 at 8.  Mr. Sussman again argues that this

provision is not applicable because this case was removed to federal

court and was not "brought" by a prisoner.  ECF No. 61 at 8.

Unlike the exhaustion bar which stated "[n]o action shall be brought,"

this provision states: "No Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of

physical injury."  42 U.S.C. § 1997e(e).  This provision is more specifically

addressed to a "Federal civil action" and warrants further discussion.  That

discussion, however, may be delayed for another day.  This issue need

not be decided at this stage of the litigation and ruling on this part of the

motion to dismiss should be deferred.

## Recommendation

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF

No. 52, be **GRANTED** in part and **DENIED** in part. All claims except for

Mr. Sussman's retaliation claim concerning the disciplinary report issued

for making threats should be **DISMISSED** for failure to exhaust

administrative remedies pursuant to 42 U.S.C. § 1997(e), but the motion

to dismiss should otherwise be **DENIED**.  Additionally, it is

**RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 2, 2016.


 s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**

**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.